**RIKER DANZIG SCHERER HYLAND & PERRETTI LLP**
Mark E. Hall, Esq. (MH-9621)
Kevin J. Larner, Esq. (KL-8627)
Headquarters Plaza, One Speedwell Avenue
Morristown, New Jersey 07960
(973) 538-0800

-and-

**LIPSKY PORTALES, P.A.**
Sean M. Lipsky, Esq.
150 River Road, Suite A3
Montville, New Jersey 07045
(201) 546-9217

Co-Counsel for Parker Street Realty, LLC, 137-139 Parker Street, LLC, 295 Fairmount Avenue, LLC, 78 Mallory Street, LLC, 733-735 6th Street, LLC, Nyburg Properties, LLC, York Funding, LLC and Eris Capital LLC

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

| In re:<br><br>MUNISH SAWHNEY,<br><br>　　　　　　　　　　　　　Debtor. | Chapter 11<br><br>Case No. 15-29250 (JKS) |
|---|---|

**OBJECTION TO DEBTOR'S CLAIMED EXEMPTIONS**

Parker Street Realty LLC, 137-139 Parker Street, LLC, 295 Fairmount Avenue, LLC, 78 Mallory Street, LLC, 733-735 6th Street, LLC, Nyburg Properties, LLC and York Funding, LLC (collectively, the "Objecting Parties"), by and through their undersigned counsel, hereby submit this objection (the "Objection") to certain of the exemptions claimed by the Debtor, Munish Sawhney (the "Debtor"). In support of this Objection, the Objecting Parties respectfully state:

**PRELIMINARY STATEMENT**

The Debtor filed his bankruptcy petition in direct response to a judgment, arising from the Debtor's fraudulent conduct, which was obtained by the Objecting Parties in the New Jersey

Superior Court in the aggregate amount of $3,934,889.49 (the "Judgment").[1] The Objecting Parties submit that the Debtor's bankruptcy petition was filed in bad faith, and that either the dismissal of the Debtor's bankruptcy case or the appointment of a chapter 11 trustee is warranted. The Objecting Parties have served discovery on the Debtor and various individuals and entities, pursuant to Fed. R. Bankr. P. 2004, to obtain additional evidence to support the dismissal of the Debtor's bankruptcy case or the appointment of a chapter 11 trustee.

In connection with his bankruptcy filing, the Debtor also filed his bankruptcy schedules, through which the Debtor improperly attempts to exempt under 11 U.S.C. § 522(d)(5) his ownership interest in twenty-nine (29) separate limited liability companies owned by the Debtor (the "Debtor-Owned Entities"). Although the Objecting Parties are seeking further information through discovery regarding, among other things, the assets and liabilities of these entities, during the Section 341(a) meeting of creditors (the "341 Meeting"), the Debtor admitted that he owned a 100% membership interest in each of the Debtor-Owned Entities, and that each of the Debtor-Owned Entities is essentially a shell-entity, created by the Debtor to hold certain real property. The Debtor is attempting to conceal this property from his creditors by improperly seeking to exempt his interest in each of the Debtor-Owned Entities.

The Objecting Parties object to the Debtor's attempt to exempt his interest in the Debtor-Owned Entities pursuant to 11 U.S.C. § 522(d)(5). As will become apparent through discovery obtained in this case, the Debtor's ownership interests in the Debtor-Owned Entities are likely the estate's only valuable assets available for payment of creditor claims, other than potential recoveries by the estate or an estate representative from third parties. Because the value of the Debtor's interest in the Debtor-Owned Entities far exceeds the statutory cap under 11

---

[1] York Funding LLC does not have a judgment against the Debtor, but is a creditor with an unliquidated claim.

U.S.C.§ 522(d) of $12,275, the Court must find that the Debtor's claimed exemptions are impermissible and that the Debtor's interests in the Debtor-Owned Entities are property of the Debtor's estate, available to satisfy creditors' claims.

## BACKGROUND

**A.     The Bankruptcy Filing.**

1.     On October 13, 2015 (the "Petition Date"), the Debtor filed a voluntary petition under chapter 11 of the Bankruptcy Code commencing this bankruptcy case.

2.     On October 27, 2015, the Debtor filed his Schedules and Statement of Financial Affairs.

**B.     The Objecting Parties and the Judgment.**

3.     On or about January 7, 2015, the Objecting Parties commenced an action captioned *Parker Street Realty, LLC, et al. v. Quest Imperial, LLC, et al.,* in the Superior Court of New Jersey, Law Division, Middlesex County (the "State Court"), Docket No. MID-L-146-15, seeking damages against the Debtor and others for their fraudulent conduct in connection with their obligations to renovate various properties owned by the Objecting Parties (the "State Court Action").

4.     After the Debtor and his wholly owned entity, Quest Imperial, LLC ("Quest"),[2] failed to timely respond to the Objecting Parties' complaint, the Objecting Parties sought and obtained a default judgment against the Debtor and Quest. In connection with the default judgment proceeding, the Honorable Vincent Le Blon, J.S.C. conducted a proof hearing, which lasted approximately five (5) hours. During the proof hearing, the Objecting Parties presented live testimony from four (4) witnesses, including two (2) expert witnesses (a licensed engineer

---

[2] Quest is one of the Debtor-Owned Entities that is the subject of this Objection. Further, Quest is a debtor in its own bankruptcy case pending before this Court (Case No. 15-31753 (JKS)).

and a contractor with decades of experience in the construction industry). The Objecting Parties also presented, and admitted into evidence, voluminous documentation detailing their damages, which documentation was contained in six (6) separate binders. Based on these proofs, Judge Le Blon held that the Debtor and Quest engaged in a long-standing fraudulent scheme to swindle more than a million dollars from the Objecting Parties by promising to completely renovate a half-dozen multi-residential properties and then abandoning the projects after performing only a small portion of the work without any permits, insurance coverage and in contravention of building codes.

5. Specifically, Judge Le Blon held, in relevant part:

> Given . . . all of the proofs, there appears to have been no intent to actually complete any of the work . . .. there were in each instance acts [ ] in violation of the New Jersey Consumer Fraud Act, as well as fraud on the part of the defendants against the plaintiffs. . . . [There were] intentional misrepresentations by the defendants to the plaintiffs in order to obtain the various payments [from defendants] . . . I find that there were violations - - willful violations of the Consumer Fraud Act, that there was fraud, misrepresentations by the defendants. . . . . . I do find that these were willful and fraudulent acts and unconscionable commercial practices on behalf of the defendant Quest and Mr. Sawhney. . .

6. Based on these findings and the proofs presented, Judge Le Blon entered the Judgment in favor of the Objecting Parties and against the Debtor and Quest in the amount of $3,934,889.49 (the "Judgment").

7. On July 9, 2015, Judge Le Blon issued an order requiring the Debtor and Quest to show cause why a statutory receiver should not be appointed, pursuant to N.J.S.A. 2A:17-66, to marshal and sell Debtor and Quest's assets to satisfy the Judgment (the "Order To Show Cause"). The Order To Show Cause also temporarily restrained Debtor and Quest from selling,

disposing or transferring certain assets, pending a determination on the application, as well as related relief.

8. Thereafter, and in direct response to the Order To Show Cause, the Debtor moved to vacate the Judgment.

9. On September 18, 2015, Judge Le Blon entered an order denying the Debtor's motion to vacate the Judgment, which was based, in part, on the Debtor's repeatedly false testimony to the State Court in multiple sworn certifications.

10. The State Court then rescheduled the hearing date for the Objecting Parties' motion to appoint a statutory receiver to marshal and sell Debtor and Quest's assets to satisfy the Judgment for October 13, 2015.

11. Just minutes before the October 13, 2015 hearing was scheduled to commence, the Debtor filed his bankruptcy petition in bad faith and, also in bad faith, removed the State Court Action to this Court.[3]

12. Also just prior to his bankruptcy filing, the Debtor filed an appeal of the Judgment to the New Jersey Superior Court, Appellate Division. The Debtor, instead of posting a supersedeas bond to stay collection on the Judgment pending appeal, used the bad faith bankruptcy filing to effectively obtain this same result while thereafter prosecuting its appeal out of the bankruptcy.

**C.    The Debtor's Claimed Exemptions.**

13. On October 27, 2015, the Debtor filed his Schedules, including Schedule C, entitled Property Claimed as Exempt.

---

[3] The Court has already disposed of the Debtor's improper removal by way of consent order remanding the removed action to the State Court.

14. On Schedule C, the Debtor claims that his ownership interest in the Debtor-Owned Entities is exempt pursuant to 11 U.S.C. § 522(d)(5). In connection therewith, notwithstanding this claim of exemption, the Debtor asserts that the current value of his interest in each of the Debtor-Owned Entities is "unknown" and that the value of his claimed exemption with respect to each of the Debtor-Owned Entities is $0.00.

15. In addition to his attempt to exempt his ownership interest in the Debtor-Owned Properties, the Debtor also claims the following property, with an asserted value totaling $8,105.51, as exempt pursuant to 11 U.S.C. § 522(d)(5):

| Description | Value of Claimed Exemption |
|---|---|
| Hudson City join checking account ending in *771 | $250.48 |
| Checking account ending in *055 | $700.00 |
| Checking Account ending in *823 Valley National Bank | $3,077.57 |
| Rupee Checking account ending in *12 at CitiBank, N.A. Bombay Mutual Building, 293 D.N. Road, Fort Mumbai 400001 | $2.93 |
| Savings account ending in *024 Wells Fargo Bank | $27.00 |
| Tennis racquets, sports shoes, old golf clubs and bag | $100.00 |
| 50% ownership of GE common stock | $3,947.53 |
| New Jeresy Real Estate Broker Salesperson (license) | $0.00 |
| Mortgage Loan Originator's License | $0.00 |
| **Total Claimed Value** | **$8,105.51** |

D. The Debtor's Testimony at the 341 Meeting.

16. During the 341 Meeting, the Debtor testified, under oath, that he owns a 100% membership interest in each of the Debtor-Owned Entities listed in his Schedules, including those set forth in Schedule C.[4] The Debtor further testified that essentially all of the Debtor-

---

[4] The Debtor lists certain of the Debtor-Owned Entities on Schedule C as a "Marcos Velez related company." The Debtor testified at the 341 Meeting of Creditors that Marcos Velez does not have any ownership interest in any of these entities or in the real property wholly-owned by these entities.

Owned Entities own real property, and that such real property is titled in the name of the Debtor-Owned Entities, not the Debtor personally.

17. Notwithstanding the Debtor's testimony as to his 100% ownership of the Debtor-Owned Entities, the Debtor was unable to testify as to the value of the assets owned by the Debtor-Owned Entities, or to the value of his membership interests therein.[5]

### OBJECTION TO DEBTOR'S EXEMPTIONS

18. Upon the filing of a bankruptcy case, "all legal or equitable interests of the debtor in property" is divested from the debtor and becomes property of the estate. 11 U.S.C. § 541(a)(1).

19. Section 522 of the Bankruptcy Code, however, allows an individual debtor to exempt property from the estate, subject to certain limitations. Section 522(d) of the Bankruptcy Code sets forth the property that may be exempted under the federal exemptions and includes specific dollar limits for these exemptions. 11 U.S.C. § 522(d).

20. The Bankruptcy Code provides that property the Debtor lists as exempt shall be deemed exempt as a matter of law, unless a party in interest objects to the claimed exemption. 11 U.S.C. § 522(l).

21. Section 522(d)(5) of the Bankruptcy Code, which is often referred to as the "spill-over" or "wild card" exemption, permits a debtor to exempt: "The debtor's aggregate interest in

---

[5] As noted above, the Objecting Parties have served Rule 2004 subpoenas on the Debtor and other individuals and entities in an effort to ascertain, among other things, the value of the Debtor's assets, including the value of the real property wholly-owned by the Debtor-Owned Entities, the value of the Debtor's interest in the Debtor-Owned Entities and whether the Debtor-Owned Entities made any improper transfers in an attempt to hide assets from the Debtor's creditors.

any property, not to exceed in value $1,225 plus up to $11,500 of an unused amount of the exemption provided under paragraph (1) of this subsection." 11 U.S.C. § 522(d)(5).[6]

22. Here, the Debtor has not claimed any exemption under section 522(d)(1). Thus, the total value of the Debtor's permitted exemption under Section 522(d)(5) is capped at $12,275.

23. As noted above, without taking into consideration the value of the Debtor's interest in the Debtor-Owned Entities, the Debtor has already claimed exemptions totaling $8,105.51 under Section 522(d)(5), meaning that the total value of the Debtor-Owned Entities that could potentially be subject to an exemption is $4,169.49.

24. Notwithstanding that the remaining portion of the "wild card" exemption is no more than $4,169.46, the Debtor seeks to exempt his 100% ownership interest in each of the twenty-nine (29) separate Debtor-Owned Entities.

25. As noted, the Debtor lists the value of the Debtor-Owned Entities as "unknown" and lists the value of his claimed exemption for each of the Debtor-Owned Entities as $0.00.

26. While the Debtor's indication that the exempted value of the Debtor-Owned Entities is $0.00 could lead to the conclusion that the Debtor is not entitled to any exemption with respect to his ownership interest in the Debtor-Owned Entities, it is not clear from the Debtor's schedules that this was his intention. Rather, it is more likely that the Debtor was attempting to exempt the full value of his interest in the Debtor-Owned Entities, but refusing to disclose that value – which likely is in the millions of dollars – to the Court and creditors.

27. Because the Debtor has neither disclosed the value of the Debtor-Owned Entities on Schedule C, nor claimed any value related thereto as exempt, it is impossible for the Court or

---

[6] Section 522(d)(1), which is the federal homestead exemption, allows for an exemption of up to $22,975 with respect to real or personal property that the debtor uses as a residence.

the Objecting Parties to determine exactly what the Debtor is seeking to exempt by listing the Debtor-Owned Entities on Schedule C.

28. As a result, the Objecting Parties have filed this Objection, and respectfully submit that the Court should determine that the Debtor's interests in the Debtor-Owned Entities is not exempt, but, rather, is property of the estate under 11 U.S.C. § 541. Moreover, the Objecting Parties respectfully submit that the Court should determine that the maximum exempt value attributable to the Debtor's interest in the Debtor-Owned Entities is $4,169.49 ($12,275 minus the $8,105.51 of the wild-card exemption already claimed as exempt by the Debtor).

## CONCLUSION

WHEREFORE, for all of the foregoing reasons, the Objecting Parties respectfully request that the Court uphold this Objection and grant the Objecting Parties such other and further relief as the Court deems just and equitable.

Dated: Morristown, New Jersey
December 18, 2015

**RIKER, DANZIG, SCHERER, HYLAND & PERRETTI LLP**

By: /s  Mark E. Hall
Mark E. Hall, Esq. (MH-9621)
Kevin J. Larner, Esq. (KL-8627)
Headquarters Plaza, One Speedwell Avenue
Morristown, New Jersey  07960
(973) 538-0800

-and-

**LIPSKY PORTALES, P.A.**
Sean M. Lipsky, Esq.
150 River Road, Suite A3
Montville, New Jersey 07045
(201) 546-9217

Co-Counsel for Parker Street Realty, LLC, 137-139 Parker Street, LLC, 295 Fairmount Avenue, LLC, 78 Mallory Street, LLC, 733-735 6th Street, LLC, Nyburg Properties, LLC, York Funding, LLC and Eris Capital LLC