UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY

In re:

MUNISH SAWHNEY,

        Debtor.

Chapter 11

Case No. 15-29250 (JKS)

---

**MEMORANDUM OF LAW IN SUPPORT OF DEBTOR IN POSSESSION MOTION FOR (I) AN ORDER (A) APPROVING THE SALE OF CERTAIN REAL PROPERTY INTERESTS, SUBJECT TO HIGHER AND BETTER OFFERS, FREE AND CLEAR OF LIENS, CLAIMS AND ENCUMBRANCES; AND (B) GRANTING RELATED RELIEF**

---

                              **TRENK, DiPASQUALE,
DELLA FERA & SODONO, P.C.**
347 Mt. Pleasant Avenue, Suite 300
West Orange, New Jersey 07052
(973) 243-8600
*Counsel to Munish Sawhney,
Debtor and Debtor in Possession*

Of Counsel:
Richard D. Trenk, Esq.

On the Brief:
Richard D. Trenk, Esq.
Robert S. Roglieri, Esq.

## PRELIMINARY STATEMENT

Munish Sawhney ("Debtor"), debtor and debtor in possession in the above captioned bankruptcy case, through his undersigned counsel, by way of this motion (the "Motion"), seeks entry of an order pursuant to sections 105 and 363 of Title 11 of the United States Code, 11 U.S.C. §§ 101, et seq. (the "Bankruptcy Code"), and Rules 6004 and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and Local Bankruptcy Rule 6004-1 of the District of New Jersey Local Bankruptcy Rules ("D.N.J. LBR 6004-1"), for entry of (i) an order approving the form agreement of sale relating to the sale of real property known as 180 Hutton Street, Jersey City, New Jersey ("180 Hutton"), 94 Neptune Avenue, Jersey City, New Jersey ("94 Neptune"), 525 Newark Avenue, Jersey City, New Jersey ("525 Neptune," collectively with 180 Hutton and 94 Neptune, the "Regal Bank Properties"), and 105 Kearney Avenue, Paterson, New Jersey ("105 Kearney," collectively with the Regal Bank Properties, the "Real Estate Entities"), subject to higher and better offers, free and clear of liens, claims and encumbrances; and (ii) an order (a) approving the sale, and (b) granting related relief.

## JURISDICTION

This court has jurisdiction to consider this Motion pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409. The predicates for the relief requested herein are sections 105(a) and 363(b), (f), (m) and (n) of the Bankruptcy Code, Bankruptcy Rules 2002, 6004 and 9014, and D.N.J. LBR 6004-1.

# STATEMENT OF FACTS

## Background

On October 13, 2015, Debtor filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the District of New Jersey. Docket No. 1. On October 27, 2015, Debtor filed his Schedules and Statement of Financial Affairs. Docket No. 16. On November 18, 2015, Debtor appeared for testimony at the Meeting of Creditors and was examined under oath by the United States Trustee. Docket No. 8.

## The Entities

180 Hutton is owned by Hutton 180, LLC ("Hutton 180"), a New Jersey limited liability company. 525 Newark is owned by Liberty 239, LLC ("Liberty 239"), a New Jersey limited liability company. 94 Neptune is owned by 94 Neptune Ave, LLC ("Neptune"), a New Jersey limited liability company. 105 Kearney is owned by Kearney Street 105 Realty, LLC ("Kearney 105 Realty"), a New Jersey limited liability company. The Debtor is the sole owner of all of these Real Estate Entities.[1]

## Mortgages on the Properties

On December 5, 2012, Hutton 180, Liberty 239 and Neptune (collectively, the "Regal Bank Borrowers") entered into a promissory note (the "Regal Bank Note") with Regal Bank in the amount of $1,300,000.00. The Debtor personally guaranteed the Loan. To secure payment on the Regal Bank Note, the Regal Bank Borrowers gave mortgages on the Regal Bank Properties. The Regal Bank Borrowers defaulted on the Regal Bank Note by failing to pay real estate taxes on the Regal Bank Properties. On April 11, 2015, the Superior Court of New Jersey, Hudson Vicinage, Chancery Division, entered a Final Judgment in Foreclosure (the "Final

---

[1] Mark Velez may assert certain rights or claims as a result of a March 31, 2011 Agreement. See Debtor Cert at Exhibit "D". Debtor listed this Agreement as Executory on Schedule "G" of the Schedules and Statement of Financial Affairs.

Judgment") on the Regal Bank Properties. Per the Final Judgment, the amount due to Regal Bank was $1,351,131.71. On December 22, 2014, the Regal Bank Borrowers entered into a Stipulation of Forbearance, whereby the Regal Bank Borrowers would make certain payments to Regal Bank and Regal Bank would forebear on foreclosure on the Regal Bank Properties. As of December 21, 2015, the pay off amount of the Regal Bank Note was $1,300,826.29. Interest accrues on the Regal Bank Note at a per diem rate of $137.25.

On or about December 22, 2014, Hutton 180, Liberty 239, Neptune, and Kearney 105 Realty entered into a mortgage note (the "Monaco Note") with James Monaco ("Monaco"). Thus, Monaco holds a second mortgage on the Regal Bank Properties and a first mortgage on 105 Kearney. The Monaco Note is in the principal amount of $235,000.00 with a maturity date of June 22, 2015.

**Sale of the Properties**

NNHK 20, LLC (the "Purchaser") has offered to purchase the Real Estate Entities for the amount of $1,800,000.00 (the "Purchase Price"). Debtor submits that the sale of the Real Estate Entities will provide maximum benefit to the estate's creditors. Debtor, in the exercise of his business judgment, has determined that the offer by the Purchaser represents the highest and best offer for the Real Estate Entities.

The sale will on an "AS IS" "WHERE IS" basis. Further, Debtor is requesting relief from the 14-day stay imposed by Rule 6004(h).

## RELIEF REQUESTED AND BIDDING PROCEDURES

In accordance with Bankruptcy Rule 6004(f)(1), the sale of property outside of the ordinary course of business may be by private sale or by public auction. See Fed. R. Bankr. P. 6004(f)(1). The sale herein will enable the estate to obtain the highest and best offer for the Real

3

Estate Entities, thus maximizing the value of the estate, and is in the best interest of Debtor, his creditors, and other parties in interest.

Simultaneously herewith, Debtor will file a Notice of Proposed Sale. The Sale Notice will be served by: (A) the Clerk on the (i) the Office of the United States Trustee for the District of New Jersey; (ii) counsel for the Debtor; (iii) counsel for all known creditors; and (iv) parties who have requested notice in the Debtor's case pursuant to Bankruptcy Rule 2002; and (B) the Debtor on counsel for the Purchaser, (collectively, the "Notice Parties").

This Sale Notice will give the Notice Parties reasonable notice of the Sale Approval Hearing to consider the proposed sale, to have an opportunity to object thereto, or to submit a higher or better offer up to the time of the Sale Hearing.

The sale of the Real Estate Entities shall be on an "AS IS, WHERE IS" basis and without representations or warranties of any kind, nature, or description by Debtor or his representatives. All of the Debtor's right, title and interest in and to the Real Estate Entities shall be sold free and clear of all claims, which claims shall attach to the proceeds of the sale. Debtor submits that these procedures are fair and reasonable, and provide the best means of ensuring that Debtor obtains the highest and best offer. As such, the sale of the Real Estate Entities pursuant to the procedures referenced above will be in the best interests of the Debtor's creditors.

## APPLICABLE LEGAL AUTHORITY

Debtor submits that ample authority exists for the approval of the sale of the Real Estate Entities to the Buyer. Section 363(b) of the Bankruptcy Code permits a debtor to sell assets outside of the ordinary course of business. Section 363(b) of the Bankruptcy Code provides, in pertinent part, that "[t]he [debtor], after notice and a hearing, may use, sell or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b). Section 105(a) of

the Bankruptcy Code further provides that "[t]he court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a). In pertinent part, Bankruptcy Rule 6004 states that "[a]ll sales not in the ordinary course of business may be by private sale or by public auction." Fed. R. Bankr. P. 6004(f)(1).

Bankruptcy Code §363(b) provides, in pertinent part, that a debtor-in-possession, "after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate," 11 U.S.C. § 363(b)(1); see In re Ames Dept. Stores, Inc., 136 B.R. 357, 359 (Bankr. S.D.N.Y. 1992) (noting that "going-out-of-business" sales are governed by section 363(b)). In addition, section 105(a) of the Bankruptcy Code provides that the Court "may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of [the Bankruptcy Code]." 11 U.S.C. § 105(a).

There are compelling reasons and sound business justifications for the Court to authorize the sale of the Real Estate Entities as proposed herein. Further, Debtor has concluded that the sale of the Real Estate Entities is likely to produce the highest or best offer that could be reasonably be obtained. The Debtor further believes the sale of the Real Estate Entities in accordance with the terms of the proposed form of order submitted herewith is in the best interests of the estate and the creditors.

Approval of the sale of the Real Estate Entities at this point in the Debtor's case is critical to maximizing the value of the Debtor's estate. The present circumstances of Debtor's case necessitate selling the Real Estate Entities at this time. In this regard, default interest is accruing on the Monaco Note at a rate of approximately 115.89 per day. Further, Regal Bank is seeking to hold a foreclosure sale on the Regal Bank Properties in February. The sale of the Real Estate Entities at this time will allow Debtor to capture significant equity which can be used to

formulate a chapter 11 plan. There is a high likelihood of the Real Estate Entities losing value to potential purchasers and increased administrative costs to the Debtor's estate. Therefore, it is in the estate's best interests to proceed with the sale at this time.

### A. Debtor Should Be Authorized to Sell the Real Estate Entities Free and Clear of All Liens Pursuant to Section 363(f) of the Bankruptcy Code

Pursuant to section 363(f), the Bankruptcy Code authorizes a debtor-in-possession to sell property of the estate under section 363(b) free and clear of any interest or lien in such property if one of the following five criteria is met:

> a) applicable non-bankruptcy law permits sale of such property free and clear of such interest;
>
> b) such entity consents;
>
> c) such interest is a lien and the price at which such property is to be sold is greater than the aggregate value of all liens on such property;
>
> d) such interest is in bona fide dispute; or
>
> e) such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest.

11 U.S.C. § 363(f).

The language of section 363(f) is in the disjunctive, so that a sale free and clear of interests can be approved if any one of the aforementioned conditions is satisfied. In re Heine, 141 B.R. 185, 189 (Bankr. D.S.D. 1992); In re Elliot, 94 B.R. 343, 345 (E.D. Pa. 1988).

A sale free and clear of liens, claims, interests, options, and encumbrances is necessary to maximize the value of the Properties. As set forth above, the Purchaser proposes to buy the Real Estate Entities for $1,800,000. Regal Bank and Monaco are owed approximately $1,559,196.39. Therefore, equity exists in the Properties.

Accordingly, Debtor can sell the Real Estate Entities free and clear of all liens pursuant to section 363(f).

## B. Purchaser is a Good Faith Buyer Within the Meaning of Section 363(m)

Although the Bankruptcy Code contains no guidance regarding the circumstances under which a sale of assets can be approved (except that notice and a hearing must be provided), the Third Circuit in <u>Abbotts</u> interpreted Section 363(b) to require a finding by the Bankruptcy Court that the purchaser of a debtor's assets is a good faith buyer. The Third Circuit construed the "good faith buyer" standard to mean one who purchases "in good faith" and for "value." <u>Abbotts</u>, 788 F.2d at 147.

The <u>Abbotts</u> court analogized the bona fides of a Section 363(b) purchaser to a buyer at a judicial sale:

> The requirement that a purchaser act in good faith speaks to the integrity of his conduct in the course of the sale proceedings. Typically, the misconduct that would destroy a purchaser's good faith status at a judicial sale involves fraud, collusion between the purchaser and other bidders or the trustee, or an attempt to take grossly unfair advantage of other bidders.

<u>Id.</u> (quoting <u>In re Rock Industries Machinery Corp.</u>, 572 F.2d 1195, 1198 (7th Cir. 1978)).

Debtor represents that the Purchaser is unaffiliated with the Debtor or any of the Debtor's entities. The Purchaser also represents that neither it nor its members are related to the Debtor and/or any of the entities.

Further, the Real Estate Entities will be sold for "value." At the Sale Hearing, Debtor will demonstrate that the Successful Bidder bought the Transferred Assets for "value."

## C. The Debtor is Selling the Real Estate Entities for a Sound Business Purpose

In addition to the <u>Abbotts Dairies</u> requirements, courts consistently require debtors-in-possession to establish a "sound business purpose" to sell any or all of their assets before confirmation of a reorganization plan. <u>In re Lionel Corp.</u> 722 F.2d 1063 (2d Cir. 1983); <u>Delaware & Hudson Railway</u>, 124 B.R. at 175-76; <u>In re Titusville Country Club</u>, 128 B.R. 396,

7

399 (Bankr. W.D. Pa. 1991); In re Sovereign Estates, Ltd., 104 B.R. 702, 704 (Bankr. ED. Pa. 1989); In re Conroe Forge & Manufacturing Corp., 82 B.R. 781, 783-86 (Bankr. W.D. Pa. 1988); Industrial Valley, 77 B.R. at 21. Courts have developed the following non-exclusive list of factors to consider in determining whether a sound business purpose exists:

    a) Sound business reason for the sale;

    b) Accurate and reasonable notice;

    c) Proportionate value of the asset to the estate as a whole (fair and reasonable);

    d) The amount of elapsed time since the filing;

    e) The likelihood that a plan of reorganization will be proposed and confirmed in the near future;

    f) The effect of the proposed disposition on the future plan;

    g) The amount of proceeds to be obtained from the sale versus the appraised value of the property sold; and

    h) Whether the asset is decreasing or increasing in value.

Lionel, 722 F.2d at 1071; Delaware & Hudson Railway, 124 B.R. at 176.

    Courts have made clear that a debtor's showing of a sound business justification does not have to be unduly exhaustive. Rather, a debtor is "simply required to justify the proposed disposition with sound business reason." In re Baldwin United Corp., 43 B.R. 888, 906 (Bankr. S.D. Ohio 1984).

    Primarily, Debtor is selling the Real Estate Entities for a sound business purpose because they have a sound business reason for the sale. In this case, Debtor is selling the Real Estate Entities because the mortgages held by Regal Bank and Monaco are in default, with daily interest accruing. The interest will deplete any available equity in the Real Estate Entities. By selling the Real Estate Entities, Debtor will be able to capture the equity in order to formulate a plan. Moreover, a foreclosure proceeding is pending.

8

Thus, Debtor has sound business justifications for selling the Real Estate Entities.

### D. Request for Waiver of the Fourteen-Day Stay Under Bankruptcy Rule 6004(h)

Bankruptcy Rule 6004(h) provides that all orders authorizing the sale of property pursuant to Bankruptcy Code Section 363 are automatically stayed for fourteen (14) days after entry of such order "unless the court orders otherwise." Fed. R. Bankr. P. 6004(h). This Court has approved requests to waive the stay so long as there is a "business need" for same. In re Grand Prix Associates, Inc., No. 09-16545 (DHS), 2009 WL 1850966 at *8 (Bankr. D.N.J. Jun. 26, 2009).

In the present matter, waiving the fourteen (14) day stay under Bankruptcy Rule 6004(h) will serve a business need by enabling the Debtor to minimize any costs associated with the proposed Sale by allowing the parties to close the transaction as soon as possible after entry of the proposed Order. Also, waiver of this stay will ensure the smooth facilitation of the sale.

Accordingly, the Debtor requests that the Court waive the fourteen (14) day stay set forth in Bankruptcy Rule 6004(h).

### NOTICE AND PRIOR REQUEST

Notice of this Motion has been given to (a) the United States Trustee for the District of New Jersey; (b) all secured creditors; (c) all parties that have requested notice in any of these cases; and (d) counsel for the Purchaser. Debtor submits that no other or further notice is required. No previous motion for the relief sought herein has been made to this or to any other court.

## CONCLUSION

For the foregoing reasons, Debtor respectfully requests that the Court grant the relief sought herein in its entirety, and such other and further relief as is just and equitable.

          **TRENK, DiPASQUALE,**
          **DELLA FERA & SODONO, P.C.**
          *Counsel to Munish Sawhney,*
          *Debtor and Debtor in Possession*

Dated: December 31, 2015        By: */s/ Richard D. Trenk*
                                                      RICHARD D. TRENK

4828-3145-8604, v. 1